UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

BRIAN KIM,

        Plaintiff,

        -against-

THE COUNTY OF NASSAU, THE NASSAU
COUNTY POLICE DEPARTMENT,
POLICE OFFICER CHARLES LYNCH,
POLICE OFFICER KRISTIN MCCOY,
POLICE OFFICER JOSEPH FRANOLICH,
POLICE OFFICER JOSE RAMIREZ,
POLICE OFFICER MOHAMMED RAHMAN,
POLICE OFFICER THOMAS PRENDERGAST,
POLICE MEDIC JAMES ROBERTS,
DETECTIVE JAMES BRODIE,
SERGEANT RICHARD MCDONALD, AND
JOHN AND JANE DOES (POLICE OFFICERS
IN THE EMPLOY OF THE COUNTY OF NASSAU
AND THE NASSAU COUNTY POLICE
DEPARTMENT BELIEVED TO BE
ASSOCIATED WITH THE 6th PRECINCT)

        Defendants.

CASE NO: 1:21-CV-4831

VERIFIED COMPLAINT
AND JURY TRIAL
DEMAND

---

Plaintiff, by his attorneys, PARKER WAICHMAN LLP, complaining of the

Defendants herein, respectfully allege upon information and belief, as follows:

## JURISDICTION

1.    This is a civil action seeking compensatory damages, punitive damages

and attorney's fees.

2. This action is brought pursuant to the common law and statutory law of the State of New York and pursuant to 42 U.S.C §1983 and §1988 and the Fourth and Fourteenth amendments to the Constitution of the United States.

3. Jurisdiction is founded upon 28 U.S.C. §1331 and §1367.

4. Plaintiff, invoking the pendent jurisdiction of this Court, also seeks monetary damages, as well as attorney's fees, for assault, battery, false arrest, and negligent screening, hiring, training and retaining police officers.

5. The individual defendants are sued in their individual capacities as well as in their capacities as employees of defendants THE COUNTY OF NASSAU and THE NASSAU COUNTY POLICE DEPARTMENT.

## VENUE

6. Venue is properly alleged in the Eastern District of New York in that the acts complained of herein occurred within this district - County of Nassau, State of New York.

## JURY TRIAL DEMAND

7. Plaintiff hereby demands a trial by jury of all issues in this action that are so triable.

## PARTIES

8. At all times relevant hereto, plaintiff BRIAN KIM was and is a natural person, and a resident of Manhasset, New York.

9.     At all times relevant hereto, defendants POLICE OFFICER CHARLES LYNCH, POLICE OFFICER KRISTIN MCCOY, POLICE OFFICER JOSEPH FRANOLICH, POLICE OFFICER JOSE RAMIREZ, POLICE OFFICER MOHAMMED RAHMAN, POLICE OFFICER THOMAS PRENDERGAST, POLICE MEDIC JAMES ROBERTS, DETECTIVE JAMES BRODIE, SERGEANT RICHARD MCDONALD, AND JOHN AND JANE DOES (the "Individual Defendants"), were and are natural persons employed by the defendant THE COUNTY OF NASSAU as members of its Police Department.

10.     At all times relevant hereto, defendant THE COUNTY OF NASSAU was and is a municipal corporation organized and existing pursuant to the laws of the State of New York.

11.     At all times relevant hereto, defendant THE NASSAU COUNTY POLICE DEPARTMENT was and is a municipal corporation organized and existing pursuant to the laws of the State of New York.

12.     On November 24, 2020, this date being within ninety (90) days after the claims herein accrued, Plaintiff served upon the Office of the County Attorney of the County of Nassau, the Nassau County Police Department, Police Detective James B. Brodie, John and/or Jane McCoy, John Does and Jane Does, a verified written Notice of Claim setting forth the time, place, nature and manner in which said claims arose.

13.     Thereafter, the Attorney of the County of Nassau, on behalf of said claimants, acknowledged receipt of the Verified Notice of Claim, and has not demanded a hearing of Plaintiff BRIAN KIM pursuant to General Municipal Law § 50-h.

14. More than thirty (30) days have elapsed since the aforesaid Verified Notice of Claim was served, and the County Attorney has neglected and refused to make any adjustment or payment thereof, and that thereafter, and within the time provided by law, this action was commenced.

15. This action was within one (1) year after both the accrual of the causes of action alleged in this Complaint and the happening of the incident complained of herein.

## FACTS COMMON TO ALL CAUSES OF ACTION

16. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "15" hereinabove as if more fully set forth at length herein.

17. On or about September 2, 2020, at approximately 8:25 pm, an operator at Nassau County's 911 call center receives a call from plaintiff BRIAN KIM's father, reporting that the plaintiff BRIAN KIM is suffering a nervous breakdown.

18. The 911 operator assures the plaintiff's father that an ambulance will be sent to their residence in Manhasset, New York, for assistance.

19. The 911 operator dispatches approximately eight units from the NASSAU COUNTY POLICE DEPARTMENT, 6TH PRECINCT, to respond to a mental aided call.

20. Shortly thereafter, Defendant POLICE OFFICER CHARLES LYNCH, POLICE OFFICER KRISTIN MCCOY, POLICE OFFICER MOHAMMED RAHMAN,

POLICE OFFICER THOMAS PENDERGRAST, and POLICE OFFICER JOSE RAMIREZ, arrive to the plaintiff's residence for the mental aided call.

21.     The aforementioned police officers identify Plaintiff BRIAN KIM as the mental aided that needs to be taken to the hospital.

22.     Subsequently Defendant POLICE MEDIC JAMES ROBERTS arrives to the scene in the Nassau County Police Department Ambulance.

23.     Upon information and belief, Defendants JOHN AND JANE DOES arrive to the plaintiff's residence.

24.     The aforementioned defendant police officers and police medic are unable to coax the plaintiff to get into an ambulance to go to the hospital.

25.     Subsequently, the plaintiff's brother arrives to the plaintiff's residence, speaks to and convinces plaintiff BRIAN KIM to go to the hospital.

26.     Plaintiff BRIAN KIM tells the officers that he will go to the hospital with his brother.

27.     As Plaintiff and his brother start walking into the driveway of the plaintiff's residence, one of the defendant police officers pulls the brother away from the plaintiff, and says "he's going with us."

28.     As a result of the defendant police officers' conduct, including forcibly pulling the brother away from Plaintiff, the aforesaid defendants escalate the situation

causing the plaintiff BRIAN KIM to back up towards the shrubbery adjoining his residence.

29. While the plaintiff's back is up against the shrubbery, the defendant police officers surround and confine Plaintiff BRIAN KIM.

30. Plaintiff BRIAN KIM then grabs a piece of a twig from the shrubbery in his hand, and waives it at the defendants pleading for them to stay away.

31. Defendant police officers then yell at Plaintiff to drop the twig.

32. Plaintiff BRIAN KIM complies with the police officers' instruction to drop the twig.

33. After Plaintiff BRIAN KIM complies with the defendants' instructions, a Defendant Police Officer yells: "take him down."

34. After yelling "take him down," at least one of the defendant Police Officers tackles the plaintiff down to the ground.

35. After tackling Plaintiff to the ground, all the aforesaid Defendant Police Officers hold Plaintiff down to the ground.

36. While the aforesaid police officer defendants are pinning Plaintiff BRIAN KIM face down to the ground, the aforesaid defendants twist Plaintiff's arms behind Plaintiff's back.

37. While the aforesaid police officer defendants are twisting Plaintiff's arms, they do so with such force that they break Plaintiff BRIAN KIM's left arm in multiple

places.    More specifically, the defendants cause Plaintiff to suffer a displaced comminuted left distal humeral shaft and supracondylar distal humerus fractures, requiring emergency surgery using surgical plates, screws, and wires.

38.    Defendant POLICE OFFICER JOSEPH FRANOLICH arrives to the scene of the incident.

39.    Upon information and belief, Defendant POLICE OFFICER JOSEPH FRANOLICH has a discussion with at least one or more of the other Defendant POLICE OFFICERS, including Defendant POLICE OFFICER KRISTIN MCCOY.

40.    After the Defendant Police officers hand cuff Plaintiff, Plaintiff's father asks the Defendant Police Officers why his son is in hand cuffs, and one of the defendant Police Officers replies by saying - "he's under arrest for assaulting an officer."

41.    Upon hearing that his son is under arrest, Plaintiff's father then asks - "do I need a lawyer?"

42.    In response to Plaintiff's father's question, one of the Defendant police officers replies by saying in sum and substance - "No, don't waste money on a lawyer."

43.    Subsequently, Defendant DETECTIVE JAMES BRODIE conducts an investigation regarding the alleged assault on Defendant POLICE OFFICER KRISTIN MCCOY, and only interviews the defendants and no other witnesses.

44.    Thereafter, Defendant DETECTIVE JAMES BRODIE issues a felony complaint wherein said Defendant claims, among other things, that Plaintiff bit through

Defendant POLICE OFFICER KRISTIN MCCOY uniform shirt causing an abrasion and damage to said police officer's uniform towards the left upper back area.

45.     Defendant SERGEANT RICHARD MCDONALD also investigates this alleged assault on Defendant POLICE OFFICER KRISTIN MCCOY, and issues an injury/accident report, which indicates that Defendant POLICE OFFICER KRISTIN MCCOY was wearing her bulletproof vest during the alleged bite.

46.     While at the plaintiff's residence, Plaintiff BRIAN KIM is taken into the ambulance, Plaintiff is now complaining of left arm pain saying that he feels like his left arm had been ripped off.

47.     Defendant POLICE MEDIC JAMES ROBERTS from the Nassau County Police Department Emergency Ambulance Bureau sedates Plaintiff BRIAN KIM.

48.     The defendant Police Officers then hand cuff Plaintiff to both rails of the stretcher and put a spit hood over Plaintiff's head and face.

49.     The defendants transport Plaintiff from Plaintiff's residence in Manhasset to Nassau University Medical Center in East Meadow, New York.

50.     While at Nassau University Medical Center, Plaintiff BRIAN KIM complains of pain to his left shoulder saying that his left shoulder feels dislocated.

51.     The physician in the emergency department sees the plaintiff and acknowledges Plaintiff's complaints of shoulder pain, and within approximately five (5)

minutes, the physician claims Plaintiff is medically fit for confinement and orders the transfer of Plaintiff to the psychiatric department for psychiatric evaluation.

52. Upon information and belief, Defendant POLICE OFFICER THOMAS PRENDERGAST then transfers the patient / Plaintiff to the psychiatric department of Nassau University Medical Center.

53. While at the psychiatric department of Nassau University Medical Center, Plaintiff continues to complain of left shoulder pain, saying that his left shoulder feels like it is dislocated.

54. The Nassau University Medical Center psychiatrist calls the physician in the emergency department because Plaintiff continues to complain that his left shoulder feels like it is dislocated.

55. The Nassau University Medical Center emergency department physician chooses to disregard the plaintiff's complaints of pain, and instead claims that the plaintiff had been evaluated and that if Plaintiff's left arm were truly dislocated, Plaintiff would be screaming in pain, and then they discharge Plaintiff for confinement.

56. The defendant police officers then transfer Plaintiff BRIAN KIM to Defendants COUNTY OF NASSAU and NASSAU COUNTY POLICE DEPARTMENT's correctional facility in East Meadow, New York.

57. While confined, Plaintiff was suffering and complaining of pain from the injuries sustained - multiple fractures to his left arm - and requested water and his right to an attorney.

58.     During Plaintiff's unlawful confinement, about four to five hours after being discharged from Nassau University Medical Center, Defendants prepare and present Plaintiff with a document entitled "Physical Condition of Defendant Questionnaire," which states, among other things, that Plaintiff does not have any injuries, and Defendants urge Plaintiff to sign said document; Plaintiff requests his right to an attorney, and no attorney is provided nor is Plaintiff provided any opportunity to call an attorney.

59.     Early in the morning of September 3, 2020, Plaintiff BRIAN KIM is transferred to Defendant NASSAU COUNTY POLICE DEPARTMENT's headquarters in Mineola, New York to appear for an arraignment to be held virtually.

60.     Prior to appearing for the virtual arraignment, Defendant JOHN or JANE DOES (POLICE OFFICERS IN THE EMPLOY OF THE COUNTY OF NASSAU AND THE NASSAU COUNTY POLICE DEPARTMENT BELIEVED TO BE ASSOCIATED WITH THE 6th PRECINCT) tells Plaintiff BRIAN KIM not to complain about his left arm before the Court.

61.     After the arraignment, Plaintiff is transferred back to the correctional facility in East Meadow, New York.

62.     Plaintiff's father arrives at the correctional facility in East Meadow, New York and posts bail.

63.     Defendants release Plaintiff into Plaintiff's father's custody.

64.     Immediately, Plaintiff's father notices that Plaintiff BRIAN KIM is in pain.

65.     Plaintiff BRIAN KIM tells his father that his left arm is in pain.

66.     Plaintiff's father immediately takes Plaintiff to North Shore University Hospital in Manhasset.

67.     Plaintiff arrives to the emergency department at North Shore University Hospital in Manhasset and complains of left arm pain at a rating of five out of ten. Based on this complaint of pain, the medical team at North Shore University Hospital conducts a CT-Scan of Plaintiff's left arm and diagnose Plaintiff with displaced comminuted left distal humeral shaft and supracondylar distal humerus fractures, and then scheduled Plaintiff for reconstructive surgery.


## AS AND FOR A FIRST CAUSE OF ACTION

### [False Imprisonment in Violation of 42 U.S.C. § 1983 and New York State Laws]

68.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "67" as if more fully set for at length herein.

69.     The Individual Defendants violated Plaintiff BRIAN KIM's right to due process of law guaranteed to him by the Fourth and Fourteenth Amendments to the Constitution of the United States in that the Individual Defendants' conduct were under the color of State Law as said Individual Defendants committed such violations while they were engaged in carrying out their duties as police officers and police medic in their

employment for the COUNTY OF NASSAU and NASSAU COUNTY POLICE DEPARTMENT.

70.     The Individual Defendants violated Plaintiff BRIAN KIM's right to due process of law guaranteed to him by the Fourth and Fourteenth Amendments to the Constitution of the United States in that the said Individual Defendants' conduct violated Plaintiff's constitutional right to be free from a false arrest.

71.     The Individual Defendants violated Plaintiff BRIAN KIM's right to due process of law guaranteed to him by the Fourth and Fourteenth Amendments to the Constitution of the United States in that the said Individual Defendants, without probable cause, improperly escalated a mental aided call to instigate baseless criminal charges against Plaintiff and arranging for Plaintiff's unlawful arrest.

72.     The Defendants POLICE OFFICER CHARLES LYNCH, POLICE OFFICER KRISTIN MCCOY, POLICE OFFICER MOHAMMED RAHMAN, POLICE OFFICER THOMAS PENDERGRAST, POLICE OFFICER JOSE RAMIREZ, and POLICE MEDIC JAMES ROBERTS intended to confine Plaintiff when they surrounded and cornered Plaintiff up against the tall hedges such that the plaintiff could not freely leave, as well as handcuffing Plaintiff and keeping Plaintiff handcuffed to the stretcher.

73.     Plaintiff BRIAN KIM was conscious of the confinement.

74.     Plaintiff BRIAN KIM did not consent to the confinement.

75.     The subject confinement was not privileged as said confinement was effectuated without a warrant.

76.     The subject confinement was further without privilege in that said confinement was not reasonable under the circumstances as Plaintiff BRIAN KIM was not conducting himself in a manner which was likely to result in serious harm to himself or others.

77.     The individual defendants thereafter held and detained the plaintiff at various locations, including but not limited to, the Nassau County Police Department Ambulance, Nassau University Medical Center, correctional centers and police precinct and/or headquarters in and around the County of Nassau.

78.     As a result of the aforementioned actions committed by the Individual Defendants, Plaintiff BRIAN KIM suffered a deprivation of the right to due process of the law guaranteed to him by the Fourth and Fourteenth Amendments to the Constitution of the United States and, as a result was subjected to great indignities, humiliation and ridicule, loss of liberty, emotional distress and mental anguish, and suffered severe injuries, including but not limited to, displaced comminuted left distal humeral shaft and supracondylar distal humerus fractures, requiring emergency surgery using surgical plates, screws, and wires.

79.     By reason of Defendants aforementioned unconstitutional and unlawful actions, which were motivated by evil motive or intent, and involved reckless or callous indifference to the federally protected rights of Plaintiff, Plaintiff has sustained general and special damages in an amount that exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction, as well as punitive damages pursuant to 42 U.S.C. § 1983, and attorneys' fees pursuant to 42 U.S.C. § 1988.

## AS AND FOR A SECOND CAUSE OF ACTION

### [Excessive Force in Violation of 42 U.S.C. § 1983]

80.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "79" as if more fully set for at length herein.

81.     The Individual Defendants violated Plaintiff BRIAN KIM's federal constitutional and statutory rights guaranteed to him by the Fourth Amendment to the Constitution of the United States in that the said Individual Defendants' conduct were under the color of State Law as said Individual Defendants committed such violations while they were engaged in carrying out their duties as police officers and police medic in their employment for the COUNTY OF NASSAU and NASSAU COUNTY POLICE DEPARTMENT.

82.     The Individual Defendants violated Plaintiff BRIAN KIM's federal constitutional and statutory rights guaranteed to him by the Fourth Amendment to the Constitution of the United States in that the said Individual Defendants' conduct violated Plaintiff's constitutional right to be free from excessive force.

83.     On or about September 2, 2020 at approximately 8:30 pm, Defendants POLICE OFFICER CHARLES LYNCH, POLICE OFFICER KRISTIN MCCOY, POLICE OFFICER MOHAMMED RAHMAN, POLICE OFFICER THOMAS PENDERGRAST, POLICE OFFICER JOSE RAMIREZ, and JOHN AND JANE DOES arrived to Plaintiff's residence in Manhasset, New York, in response to a mental aided call, and upon information and belief, at least four to five of the aforementioned

Defendants unlawfully arrested Plaintiff and fractured Plaintiff's left arm in the process of said unlawful arrest.

84. The excessive force used by the aforementioned Defendants was not reasonable under the circumstances.

85. The aforementioned defendants used excessive force even though the plaintiff did not present an immediate threat to the individual defendants' or anyone else's safety.

86. The aforementioned defendants used excessive force when the plaintiff was not actively resisting arrest.

87. As a result of the aforementioned actions committed by the aforementioned defendants, Plaintiff BRIAN KIM suffered a deprivation of the rights guaranteed to him by the Fourth Amendments to the Constitution of the United States and, as a result was subjected to great indignities, humiliation and ridicule, loss of liberty, emotional distress and mental anguish, and suffered severe injuries, including but not limited to, displaced comminuted left distal humeral shaft and supracondylar distal humerus fractures, requiring emergency surgery using surgical plates, screws, and wires.

88. By reason of Defendants aforementioned unconstitutional and unlawful actions, which were motivated by evil motive or intent, and involved reckless or callous indifference to the federally protected rights of Plaintiff, Plaintiff has sustained general and special damages in an amount that exceeds the jurisdictional limits of all lower courts

that would otherwise have jurisdiction, as well as punitive damages pursuant to 42 U.S.C. § 1983, and attorneys' fees pursuant to 42 U.S.C. § 1988.

## AS AND FOR A THIRD CAUSE OF ACTION

### [New York State Law Claim of Assault]

89.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "88" as if more fully set for at length herein.

90.     The defendants POLICE OFFICER CHARLES LYNCH, POLICE OFFICER KRISTIN MCCOY, POLICE OFFICER MOHAMMED RAHMAN, POLICE OFFICER THOMAS PENDERGRAST, POLICE OFFICER JOSE RAMIREZ, and JOHN AND JANE DOES intentionally caused Plaintiff BRIAN KIM to become concerned that said defendants were about to cause harmful and offensive bodily contact when said defendants cornered Plaintiff, yelled at Plaintiff to drop the twig, and yelled "take him down."

91.     The aforementioned Defendants had real and apparent ability to bring about the harmful and offensive bodily contact as there were at least four to five of the aforementioned defendants against one mental aided Plaintiff.

92.     The aforementioned defendants made menacing acts or gestures that caused Plaintiff to believe harmful or offensive bodily contact was about to occur, which includes but is not limited to, at least one of the aforementioned defendants lunging towards the plaintiff to tackle said Plaintiff.

93. As a result of the aforementioned actions, Plaintiff BRIAN KIM suffered a deprivation of the rights guaranteed to him by New York State Law and, as a result was subjected to great indignities, humiliation and ridicule, loss of liberty, emotional distress and mental anguish.

94. By reason of Defendants aforementioned unconstitutional and unlawful actions, which were motivated by evil motive or intent, and involved reckless or callous indifference to the federally protected rights of Plaintiff, Plaintiff has sustained general and special damages in an amount that exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction, as well as punitive damages pursuant to 42 U.S.C. § 1983, and attorneys' fees pursuant to 42 U.S.C. § 1988.


## AS AND FOR A FOURTH CAUSE OF ACTION

### [New York State Law Claim of Battery]

95. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "94" as if more fully set for at length herein.

96. Defendants POLICE OFFICER CHARLES LYNCH, POLICE OFFICER KRISTIN MCCOY, POLICE OFFICER MOHAMMED RAHMAN, POLICE OFFICER THOMAS PENDERGRAST, POLICE OFFICER JOSE RAMIREZ, and JOHN AND JANE DOES, without probable cause or provocation, offensively and forcibly used excessive force on Plaintiff BRIAN KIM when said aforementioned defendants tackled Plaintiff to the ground and then twisted and fractured Plaintiff's arm.

97.     The aforementioned defendants were not justified in using the aforesaid force as no force was necessary when the plaintiff agreed to go to the hospital with his brother.

98.     The aforementioned Defendants were not justified in using the aforesaid force as it was not reasonable for said defendants to believe that Plaintiff was resisting arrest or attempting to escape.

99.     The aforementioned defendants were not justified in using the aforesaid force as said defendants arrived to the scene responding to a mental aided call and not a crime; the plaintiff agreed to go to the hospital; and the defendants had sufficient assistance as there were several police officers present versus only one mental aided plaintiff.

100.    At the time the aforementioned defendants committed the aforementioned act of battery, they were all acting within the scope of their employment with the COUNTY OF NASSAU and NASSAU COUNTY POLICE DEPARTMENT.

101.    As a result of the aforementioned actions, Plaintiff BRIAN KIM suffered a deprivation of the rights guaranteed to him by New York State Laws and, as a result was subjected to great indignities, humiliation and ridicule, loss of liberty, emotional distress and mental anguish, and suffered severe injuries, including but not limited to, displaced comminuted left distal humeral shaft and supracondylar distal humerus fractures, requiring emergency surgery using surgical plates, screws, and wires.

102. By reason of Defendants aforementioned unconstitutional and unlawful actions, which were motivated by evil motive or intent, and involved reckless or callous indifference to the federally protected rights of Plaintiff, Plaintiff has sustained general and special damages in an amount that exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction, as well as punitive damages pursuant to 42 U.S.C. § 1983, and attorneys' fees pursuant to 42 U.S.C. § 1988.

## AS AND FOR A FIFTH CAUSE OF ACTION
### [Negligence]

103. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "102" as if more fully set for at length herein.

104. On or about September 2, 2020 at approximately 8:30 p.m., the defendants POLICE OFFICER CHARLES LYNCH, POLICE OFFICER KRISTIN MCCOY, POLICE OFFICER MOHAMMED RAHMAN, POLICE OFFICER THOMAS PENDERGRAST, POLICE OFFICER JOSE RAMIREZ, JOHN AND JANE DOES, and POLICE MEDIC JAMES ROBERTS responded to a mental aided call and arrived to the plaintiff's residence to assist in getting the plaintiff to the hospital, but instead said defendants offensively touched the plaintiff by forcibly tackling Plaintiff, and then twisting and breaking the plaintiff's arm, then handcuffing Plaintiff to the stretcher placed into the Nassau County Police Department Ambulance, and falsely arresting Plaintiff BRIAN KIM.

105. At the time the aforementioned defendants committed the aforementioned illegal and unconstitutional acts, they were all acting within the scope of their employment with Defendants THE COUNTY OF NASSAU and NASSAU COUNTY POLICE DEPARTMENT.

106. The aforesaid wrongful acts committed by the individual defendants were as a result of the negligence, recklessness and carelessness of the defendants THE COUNTY OF NASSAU and the NASSAU COUNTY POLICE DEPARTMENT, in screening, hiring, training, retraining, investigating, and supervising, the defendants POLICE OFFICER CHARLES LYNCH, POLICE OFFICER KRISTIN MCCOY, POLICE OFFICER MOHAMMED RAHMAN, POLICE OFFICER THOMAS PENDERGRAST, POLICE OFFICER JOSE RAMIREZ, JOHN AND JANE DOES, and POLICE MEDIC JAMES ROBERTS.

107. The aforementioned defendants were not competent, properly trained or skilled, to safely handle mental aided calls.

108. Upon information and belief, Defendants THE COUNTY OF NASSAU and the NASSAU COUNTY POLICE DEPARTMENT, had knowledge of the fact or facts of the aforementioned defendants' lack of competence, proper training and skill to safely handle mental aided calls, to investigate said defendants' capacity to handle mental aided calls.

109. Defendants THE COUNTY OF NASSAU and the NASSAU COUNTY POLICE DEPARTMENT could have anticipated that the aforementioned defendants'

lack of competence, proper training and skills to handle mental aided calls would likely result in injuries to others, namely Plaintiff BRIAN KIM herein.

110. Defendants THE COUNTY OF NASSAU and the NASSAU COUNTY POLICE DEPARTMENT failed to correct or remove said defendants.

111. As a result of the aforesaid negligence, recklessness and carelessness of the defendants THE COUNTY OF NASSAU and the NASSAU COUNTY POLICE DEPARTMENT, and through no culpable conduct on part of Plaintiff BRIAN KIM, said Plaintiff suffered a deprivation of the rights guaranteed to him by the Fourth and Fourteenth Amendments to the Constitution of the United States, New York State Law, and, as a result, Plaintiff suffered great indignities, humiliation and ridicule, loss of liberty, emotional distress and mental anguish, and suffered severe injuries, including but not limited to, displaced comminuted left distal humeral shaft and supracondylar distal humerus fractures, requiring emergency surgery using surgical plates, screws, and wires.

112. By reason of Defendants aforementioned unconstitutional and unlawful actions, which were motivated by evil motive or intent, and involved reckless or callous indifference to the federally protected rights of Plaintiff, Plaintiff has sustained general and special damages in an amount that exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction, as well as punitive damages pursuant to 42 U.S.C. § 1983, and attorneys' fees pursuant to 42 U.S.C. § 1988.

## AS AND FOR A SIXTH CAUSE OF ACTION

### [Monell Claim pursuant to 42 U.S.C. § 1983]

113.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "112" as if more fully set for at length herein.

114.     Upon information and belief, the Individual Defendants' aforementioned conduct complained of herein, were carried out pursuant to a policy, custom or practice, ordinance, regulation, or decision officially adopted and promulgated by Defendants THE COUNTY OF NASSAU and THE NASSAU COUNTY POLICE DEPARTMENT, which were in existence at the time of the conduct complained of herein, and said Individual Defendants engaged in said conduct with the full knowledge, consent and cooperation and under the supervisory authority of Defendants THE COUNTY OF NASSAU and THE NASSAU COUNTY POLICE DEPARTMENT.

115.     Defendants THE COUNTY OF NASSAU and THE NASSAU COUNTY POLICE DEPARTMENT, by their policy-making agents, servants and/or employees, authorized, sanctioned or ratified the Individual Defendants' wrongful acts and/or failed to prevent or stop those acts and/or allowed those acts to continue.

116.     At all times mentioned herein, the Individual Defendants acted under color of law.

117.     In or about late June, 2020, Nassau County legislators Siela Bynoe and Josh Lafazana introduced a bill, which addressed the growing calls for reform around the response by law enforcement to mental health calls.

118. In early August, 2020 the COUNTY OF NASSAU's legislature unanimously passed said bill.

119. Prior to the introduction and passing of the bill, Defendants COUNTY OF NASSAU and NASSAU COUNTY POLICE DEPARTMENT have been aware that mental health responses were one of the most difficult parts of a police officer's jobs, and that responding to mental health calls were increasingly becoming a bigger part of a police officer's duties, as in both 2018 and 2019, the NASSAU COUNTY POLICE DEPARTMENT responded to more than 300 violent mental health calls.

120. Prior to the introduction of the bill, Defendants COUNTY OF NASSAU and NASSAU COUNTY POLICE DEPARTMENT knew that their police officer employees were confronting, and would confront in the future, situations with the mental health community that led to and could lead to escalations between the members of the mental health community and police officers.

121. As a result of having knowledge that its employees would confront such situations, Defendants COUNTY OF NASSAU and NASSAU COUNTY POLICE DEPARTMENT took steps to introduce the aforesaid bill so as redesign the approach towards assisting members of the mental health community. The purpose of redesigning the approach is to reduce the possibilities for escalations between members of the mental health community and responding police officers.

122. Upon information and belief, prior to September 2, 2020, Defendants COUNTY OF NASSAU and NASSAU COUNTY POLICE DEPARTMENT were aware that their employee Police Officers' approach to responding to mental health calls were

insufficient and led to mishandling of such situations. For example, said Defendants were aware of several incidents between police officers and the mental health community that escalated because the police officer incorrectly assumed that the person with mental illness was acting strangely due to some drug-related situation; and some of said events have even escalated to situations that resulted in the police officers killing persons with a history of mental illness.

123. Prior to September 2, 2020, Defendants COUNTY OF NASSAU and the NASSAU COUNTY POLICE DEPARTMENT, were aware that training or supervision of their police officers would make responses to mental health calls less difficult between the police officers and the members of the mental health community. More specifically, said Defendants were aware that of the approximate 840 hours of training that Nassau County Police cadets undergo, only 10 of said hours are allocated toward how to respond and handle mental health calls.

124. Defendants COUNTY OF NASSAU and the NASSAU COUNTY POLICE DEPARTMENT have had knowledge of their police officers' lack of training and insufficient policies with respect to responding to mental health calls for several years, as evidenced by the numerous cases litigated in this very Court, including the case of *Greenway v. County of Nassau*, 97 F.Supp.3d 225 (E.D.N.Y. March 31, 2015) wherein the Nassau County police officers responded to a mental aided call and instead of assisting the mentally ill person, the Nassau County Police officers tased said mentally ill person three to four times.

125. As a result of the lack of training and insufficient policies, the COUNTY OF NASSAU introduced the aforesaid bill, seeking to create a committee to study alternative approaches to law enforcement intervention in situations regarding persons with mental illnesses, and Defendant NASSAU COUNTY POLICE DEPARTMENT's Police Commissioner is to co-chair this committee, all with the purpose of creating policies that would lead to their police officers responding to mental health calls in a way that de-escalates the situation for the benefit of everyone's safety, especially the safety of the mentally ill persons.

126. Upon information and belief, according to the aforesaid bill, in efforts to promote the protection of the metal health community's constitutional rights, the aforementioned committee would seek to redirect the responsibility of police officers responding to mental health calls in one of two ways: (1) create a mental health unit within the police department staffed by mental and behavioral health professionals, to help police officers in providing assistance to members of the metal health community; or (2) expand the role for mental health professionals, like those that already exist in the Nassau County Mobile Crisis Team, by "co-deploying" said mental health professionals with police officers to all mental health related calls for proper supervision.

127. On or about September 2, 2020 at approximately 8:30 pm, the defendants did arrive to Plaintiff's residence in response to a mental aided call to assist with transporting Plaintiff to the hospital, but instead, the individual defendants assaulted, and battered Plaintiff, and used such excessive force that they broke the plaintiff's arm, while falsely arresting Plaintiff BRIAN KIM, without probable cause to do so.

128.     The aforementioned actions resulted in the plaintiff being deprived of his right to due process; his right to be free from false arrest; and his right to be free from excessive use of force.

129.     The defendants subjected Plaintiff to such deprivations, either in a malicious, reckless disregard, or callous indifference of the plaintiff's federally protected rights.

130.     Defendants THE COUNTY OF NASSAU and the NASSAU COUNTY POLICE DEPARTMENT, have grossly failed to train and adequately supervise its police officers in how to safely manage mental aided calls, including but not limited to, the police officers' failure to seek the assistance and co-deployment of mental health professionals to the scene of mental aided calls, especially when said Defendants' police officers are not in possession of a court authorized arrest warrant and where an individual, such as Plaintiff herein, has not committed a crime but instead was in need of assistance from mental health professionals.

131.     Defendants THE COUNTY OF NASSAU and the NASSAU COUNTY POLICE DEPARTMENT, have grossly failed to train and adequately supervise its police officers in how to properly investigate false arrests of mentally ill persons, such that the mentally ill persons are deprived of their civil rights, especially when the Individual Defendants tell Plaintiff's father not to seek legal counsel; when Defendant DETECTIVE JAMES BRODIE chose to only interview the police officers as to what occurred and not Plaintiff's father or brother; when Defendant SERGEANT RICHARD MCDONALD issued a report claiming that Plaintiff bit through Defendant KRISTIN MCCOY's

uniform shirt and bullet proof vest; when Defendants JOHN and/or JANE DOE disregarded Plaintiff's request for his right to an attorney, and urged Plaintiff to sign a document stating that he did not suffer any injury, and then threaten plaintiff to hide the fact that he was in pain due to his broken left arm during the arraignment, all of said conduct deprived Plaintiff of his civil rights, including his right to due process.

132.    As a result of Defendants' acts, Plaintiff has suffered severe damages, including, loss of liberty, emotional distress and mental anguish, and a displaced comminuted left distal humeral shaft and supracondylar distal humerus fractures, requiring emergency surgery using surgical plates, screws, and wires.

133.    By reason of Defendants aforementioned unconstitutional and unlawful actions, which were motivated by evil motive or intent, and involved reckless or callous indifference to the federally protected rights of Plaintiff, Plaintiff has sustained general and special damages in an amount that exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction, as well as punitive damages pursuant to 42 U.S.C. § 1983, and attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff demands judgment against defendants, THE COUNTY OF NASSAU, THE NASSAU COUNTY POLICE DEPARTMENT, POLICE OFFICER CHARLES LYNCH, POLICE OFFICER KRISTIN MCCOY, POLICE OFFICER JOSEPH FRANOLICH, POLICE OFFICER JOSE RAMIREZ, POLICE OFFICER MOHAMMED RAHMAN, POLICE OFFICER THOMAS PRENDERGAST, POLICE MEDIC JAMES ROBERTS, DETECTIVE JAMES BRODIE, SERGEANT RICHARD MCDONALD, AND JOHN AND JANE DOES (POLICE OFFICERS IN THE

EMPLOY OF THE COUNTY OF NASSAU AND THE NASSAU COUNTY POLICE DEPARTMENT BELIEVED TO BE ASSOCIATED WITH THE 6th PRECINCT) on all causes of action for general and special damages in an amount which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction, as well as punitive damages pursuant to 42 U.S.C. § 1983, together with costs, costs and disbursements of this action, including attorney's fees, pursuant to 42. U.S.C. §1988, and for such other and further relieve that the Court deems just and proper.

Dated: Port Washington, New York
      August 26, 2021

By: _____
     Brett A. Zekowski (BZ2943)
     S. Joonho Hong (SH9513)
     Parker Waichman LLP
     Office & Post Office Address:
     6 Harbor Park Drive
     Port Washington, NY 11050
     (516) 466-6500
     Our File No.0025851

To:

County of Nassau
c/o County of Attorney
One West Street
Mineola NY 11501

Nassau County Police Department
c/o County of Attorney
One West Street
Mineola NY 11501

# INDIVIDUAL VERIFICATION

STATE OF NEW YORK

COUNTY OF Nassau                    SS.:

Brian Kim
_____ being duly sworn deposes and says:

I am _____ the plaintiff(s) herein; I have read the annexed Verified Complaint and Jury Trial Demand and know the contents thereof and the same are true to my knowledge, except for those matters therein which are stated to be alleged on information and belief, and as to those matters, I believe them to be true.

BRIAN KIM

Sworn to before me this
26th Day of August, 2021

Notary Public

MEREDITH IPPOLITO
Notary Public, State of New York
Reg. No. 01IP5078174
Qualified in Nassau County
Commission Expires May 19, 2023